Alcohol Blood Tests — Payment Under the provisions of 19 O.S. 790.1 [19-790.1] (1968), a county hospital may not extract blood from an individual, other than a certified indigent, without charging for said service, that the cost of extracting said blood for purposes of chemical testing as provided for in 47 O.S. 751 [47-751] (1968), should be paid for by the law enforcement agency requesting said test from their services or operating accounts; that said costs may be paid by the District Attorney's office from his appropriate operating account, and where the accused requests additional testing, he would be liable to pay the costs thereof; however, under the provisions of 47 O.S. 753 [47-753] (1968), an accused's license to drive a motor vehicle cannot be revoked due to his refusal to pay for said testing, but may only be revoked upon his refusal to submit to said testing at the request of a law enforcement officer. The Attorney General has had under consideration your request for an opinion, wherein you ask the following questions: "1. Is the county hospital obligated to perform the service of extracting blood without charge in view of the fact that the evidence so obtained will be used in a prosecution conducted in the courts of this county? "2. If the county hospital is not obligated to perform such service without charge, from what funds should such a charge be paid? "3. Can the person arrested properly be charged with payment of the the fee for extracting blood, and if so, upon his refusal to pay such charge and subsequent failure to obtain blood for testing, could his driver's license be revoked for his refusal to submit to testing as provided in 47 O.S. 753 [47-753] (1968)?" O.S.L. 1965, ch. 287, Section 1 (19 O.S. 790.1 [19-790.1] (1968)), provides in part: "(b) The board of control shall in management of a county hospital: "4. . . . admit, without charge, to the county hospital, all indigent patients certified to be such by said board of control, in need of medical or surgical treatment; and all other patients admitted to said hospital for treatment shall be charged a just and reasonable price for their medical and surgical treatment while in the custody of said hospital. * * * "10. Either as a board or through the administrator, to use reasonable diligence and efforts to make collections of accounts for hospital services rendered." (Emphasis added) This is the only statute dealing with the payment for services rendered by a county hospital. Thus, it is clear, that except for certified indigent patients, all other persons are to be charged for services provided by a county hospital, and said hospital is not authorized to give its services away except to said indigents. It is, therefore, the opinion of the Attorney General that your first question be answered in the negative; a county hospital may not extract blood from an individual, other than a certified indigent, without charging for said service. There is no provision in the statutes specifying who shall pay for the service of extracting blood as provided for in O.S.L. 1967, ch. 86 (47 O.S. 751 [47-751] — 47 O.S. 760 [47-760] (1968)). Thus, the question of payment for said service must be 3. determined upon a contractual basis. O.S.L. 1967, ch. 86, Section 1 (47 O.S. 751 [47-751] (1986)) states in part: ". . . . The test or tests shall be administered at the direction of a law enforcement officer. . . ." (Emphasis added) O.S.L. 1967, ch. 86, Section 2 (47 O.S. 752 [47-752] (1968)) states: "Only a licensed medical doctor, osteopathic physician, qualified technician, technologist, or registered nurse acting at the request of a law enforcement officer may withdraw blood for purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath specimens. The person tested may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer, providing the specimen for testing is obtained at the same time as or is an aliquot of that obtained by the law enforcement officer, and provided further, that said aliquot specimen may be delivered to any person qualified to analyze such specimens as the subject may designate, and provided further that such subject makes arrangements for delivery thereof, in order for any evidence under this act to be admissible. The failure or inability to obtain an additional test by a person shall not preclude the admission of the test or tests taken at the direction of a law enforcement officer. The blood specimen shall be tested to determine the alcoholic content therein, and also for the presence of any other substances which might have influenced the behavior of the subject if he so requests. A written report of the results including full information concerning the test or tests taken at the direction of the law enforcement officer shall be made available to the subject. The results of the test or tests as provided for herein shall not be admissible in civil actions." (Emphasis added) The ordinary situation which transpires is an oral, and often vague, request by either the law enforcement officer and/or the accused for the nurse on duty in the hospital emergency room to draw blood from the accused's arm; whereupon, with the assent of the accused, the blood is drawn. A contract implied in fact is one not expressed by the parties, but implied from the facts and circumstances showing a mutual intention to contract; it need not be evidenced by any precise words, and may result from random statements and uncertain language, and it may be proved by circumstances showing that the parties intended to contract, and by the general course of dealing between them. 17 C.J.S., Contracts, Section 4 (b). Every contract results from an offer and the acceptance thereof, and an offer is a proposal to enter into a contract, and it may be expressed by acts as well as by words. 17 C.JS., Contracts, Sections 34-35. Thus, the person making the request or offer for the blood test is the contracting party and must pay the costs thereof. The governmental agency or office employing the law enforcement officer who requested the test would become liable for the costs thereof, to be paid from their operating funds. The District Attorney's once may pay the costs of obtaining such tests from his appropriate operating account, in that the evidence obtained thereby is used in the prosecution of criminal cases and is a justifiable operating expense of said office. Further, because of the restrictive language of Sections 751 and 752, supra, law enforcement officers are not entitled to the results of a test requested by the accused, and must request said test before being entitled to the resulting evidence. It has been suggested that the costs of such tests be "absorbed" by the court fund of the county, under O.S.L. 1968, ch. 412, Section 4 (20 O.S. 1304 [20-1304] (1968)), which provides in part: "Claims against the Court Fund shall include only such expenses as may be lawfully incurred incident to the operation of the court in said county, and are approved by the governing board of the Court Fund or a majority thereof." (Emphasis added) The payment for services for obtaining physical evidence is a cost of either the State and/or the defendant in preparing a case for trial, and it is not an expense incident to the operation of the court. Thus, in answer to your second question, it is the opinion of the Attorney General that the governmental agency or office employing the law enforcement officer who requests the blood test should pay the costs thereof from their services or operating accounts, and that the District Attorney's office may pay for the costs of such tests from his appropriate operating account. Section 752, supra, provides in part that the person tested may have a qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer, but that failure or inability to obtain an additional test by such person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer. Thus, as discussed above, where the person tested requests the test, that person may properly be charged with the costs of administering the test. O.S.L. 1968, ch. 86, Section 3 (47 O.S.Supp. 1968 Section 753[47-753] [47-753]) provides: "If a conscious person under arrest refuses to submit to chemical testing, none shall be given, but the Oklahoma Commissioner of Public Safety, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of alcohol or intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license to drive and any nonresident operating privilege for a period of six months; or if the person is a resident without a license or permit to operate a motor vehicle in this state, the Oklahoma Commissioner of Public Safety shall deny to the person the issuance of a license or permit for a period of six months after the date of the alleged violation, subject to review as hereinafter provided." Thus, under this statute, the only criteria for revoking a person's license to drive a motor vehicle is their refusal to submit to chemical testing, and not whether they pay for said testing. Should an accused request testing and then not be tested upon his refusal to pay for same, he must then refuse to submit to testing at the request of the law enforcement officer before his license to drive a motor vehicle could be revoked by the Oklahoma Commissioner of Public Safety. It is, therefore, the opinion of the Attorney General that your third question be answered in the negative; an accused's license to drive a motor vehicle may not be revoked under the provisions of Section 753, supra, by his refusal to pay for chemical testing, but only upon his refusal to submit to chemical testing at the request of a law enforcement officer. (Robert D. McDonald)